IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE M. KISKA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LINDA S. MCMAHON, )<br>Acting Commissioner of Social Security,[1] )<br>)<br>Defendant. ) | Civil Action No. 06-209 Erie |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

      Plaintiff, Denise M. Kiska, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that she was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Kiska filed an application for SSI on February 11, 2004, alleging disability since January 27, 2004 due to a back injury and bipolar disorder (Administrative Record, hereinafter "AR", at 76-77; 89). Her application was denied initially, and Kiska requested a hearing before an administrative law judge ("ALJ") (AR 52-56; 58). A hearing was held on February 15, 2006, and on February 23, 2006, the ALJ found that Kiska was not disabled at any time through the date of his decision, and therefore was not eligible for SSI benefits (AR 16-22). Kiska's request for review by the Appeals Council was denied (AR 8-11), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny both motions and the matter will be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**

Kiska was born on November 6, 1963 and was forty-two years old on the date of the

---

    [1]Linda S. McMahon became the Acting Commissioner of Social Security on January 20, 2007. Pursuant to Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. 405(g), she is automatically substituted as the defendant in this case.

ALJ's decision (AR 21; 76).  She is a high school graduate with past relevant work experience as a stock person, maintenance worker, snack bar attendant, security guard and housekeeper (AR 95; 101; 108).  Kiska has claimed disability due to both physical and mental impairments.

### A. *Medical evidence submitted to the ALJ*

#### 1. *Physical impairments*

Prior to her alleged disability date, on June 7, 2003, Kiska suffered a fall while at work and sought emergency room treatment for lower back pain (AR 163).  A lumbar spine x-ray showed no fractures and an MRI showed a small herniated disc at L4-5 which the radiologist felt was clinically insignificant (AR 159).  She was diagnosed with lumbar strain, prescribed anti-inflammatory medication and placed on modified duty (AR 157; 161).

Kiska underwent 24 physical therapy sessions between July 1, 2003 and October 15, 2003 (AR 201).  Upon discharge, her physical therapist reported that her symptoms persisted and he was of the opinion that further physical therapy was not warranted (AR 201).  On October 27, 2003, Dean Spencer, M.D., Kiska's primary care physician, referred her to a pain management clinic (AR 250).

November 2003 x-rays of Kiska's lumbar spine were unremarkable other than minimal left scoliosis of the mid to lower lumbar spine which may have been positional (AR 242).

Kiska was seen by Anthony Colantonio, M.D., at the pain management center on February 2, 2004 (AR 223).  Her chief complaint was low back pain with numbness in both legs, exacerbated by bending, walking, standing, sitting, lifting, stair-climbing and stressful situations (AR 223).  Dr. Colantonio formed an impression of mechanical low back pain and myofascial pain secondary to the underlying mechanical low back pain (AR 225).  He recommended Neurontin, injection therapy, further diagnostics to rule our peripheral neuropathy and consultation with a behavioral therapist (AR 225).  Kiska declined to take Neurontin due to her concerns about sleep difficulties (AR 221, 225).

Kiska underwent lumbar injection therapy in February and March 2004 but noted "very little improvement" in her pain, which she reported was exacerbated with prolonged standing or walking (AR 212; 214; 218-219).  An EMG of the lower extremities conducted on February 27, 2004 revealed findings within normal limits (AR 212; 230).

On July 19, 2004 Kiska complained of musculoskeletal symptoms, swelling and fatigue (AR 340). Dr. Spencer strongly encouraged weight loss by following dietary restrictions and an exercise routine (AR 340).

On January 4, 2005, Kiska was seen by Dr. Spencer, who reported that she exhibited a full range of motion and had normal stability, strength and tone (AR 339). An electrophysiologic evaluation of Kiska's upper and lower extremities conducted in early 2005 revealed findings within normal limits (AR 336).

On May 17, 2005, Kiska returned to Dr. Spencer and reported that her back pain remained unchanged (AR 330). Dr. Spencer reported that she had radicular pain and weakness in both legs (AR 330). On August 17, 2005 he noted right middle paraspinal muscle tenderness (AR 323).

Kiska was evaluated by Robert Santrock, an orthopedic surgeon for complaints of left knee pain on October 25, 2005 (AR 322). On physical examination, Kiska was able to ambulate bearing equal weight on both lower extremities without the use of assistive devices, go from a seated to standing position with relative ease and straight leg raise testing was easily performed without pain (AR 322). Dr. Santrock formed an impression of left patellofemoral syndrome and recommended conservative management (AR 322).

On February 11, 2006, Dr. Spencer completed a medical source statement relative to Kiska's ability to engage in work-related activities (AR 347-349). Dr. Spencer opined that in an 8-hour workday, Kiska could sit for eight hours, stand for four hours, and walk for four hours (AR 347). She could occasionally lift and carry up to ten pounds and could use her extremities for repetitive action (AR 347-348). However, she could only occasionally bend, squat and reach above the shoulder level and could never kneel, crawl and stoop (AR 348). He indicated that Kiska was only capable of part-time work activity consisting of four hours per day three days per week (AR 349). Dr. Spencer noted that his opinion was "based on exams done in 2004" (AR 349).

    2.    *Mental impairments*

Prior to her alleged disability date, Kiska was seen by Gregory Richards, M.D., a psychiatrist at UPMC Behavioral Health on December 2, 2002 (AR 148-149). Dr. Richards

3

reported that Kiska had been under his care for multiple years for treatment of bipolar disorder (AR 148). He further reported that she had been on Depakote for a "long time" and was previously on Effexor (AR 148). Dr. Richards indicated she had a long history of mood instability and mood swings with no manic episodes but mostly depression (AR 148). He noted she was under a lot of stressors which included her loss of employment and recent marital difficulties related to an abusive husband and recent separation (AR 148). He indicated that Kiska had continued difficulty coping with life, but she declined individual therapy and only wanted to remain on Depakote (AR 148).

On mental status examination, Dr. Richards reported that her mood was depressed, her affect was appropriate, her short and long term memory were intact, her concentration was within normal limits, her thoughts were goal-directed, her insight and judgment appeared within normal limits, she denied hallucinations or delusions and denied suicidal ideation or intent, although she had them in the past (AR 149). Dr. Richards diagnosed bipolar disorder NOS and assigned her a Global Assessment of Functioning ("GAF") score of 50 (AR 149).[2] He continued her Depakote prescription (AR 149).

On August 18, 2003, Kiska was evaluated by J. Alexander Dale, Ph.D., in connection with a prior application for benefits (AR 173-179). Kiska reported that her problems began "years ago" (AR 174). She reported she was depressed and claimed to suffer from hallucinations and delusions "[a]ll the time" (AR 175). Mental status examination revealed that she did not appear anxious and acted appropriately during the examination, and she had no characteristics of speech which could be construed as symptoms of mental illness (AR 175-176). However, Dr. Dale reported that her stream of thought was somewhat limited and continuity was difficult to establish (AR 176). She was only moderately limited in her abstract thinking and she was able to concentrate well while performing serial sevens without error (AR 177). Kiska reported she was able to get along with others, including co-workers, and could initiate social contacts (AR 178-

---

[2]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).

179).  She reportedly was able to carry out instructions, but became tense and nervous in stressful circumstances (AR 179).

Dr. Dale recognized that Kiska reported a diagnosis of bipolar disorder, but he indicated that she did not seem to have any current symptoms (AR 178).  He noted however, that it was a "phasic" disorder and that perhaps her medications were working well at the present time (AR 178).  Dr. Dale completed a medical assessment form and opined that Kiska had only slight limitations in understanding, remembering and carrying out detailed instructions and had no other limitations (AR 181-182).

Dr. Richards provided a report dated September 1, 2003 stating that he had first examined Kiska in 2000 and most recently examined her in June 2003 (AR 183-184).  He indicated he examined her every three months for her bipolar disorder (AR 183).  He reported that she had been under a lot of pressure from an abusive relationship with her husband and a recent auto accident (AR 183).  On mental status examination, Dr. Richards reported that her mood was depressed and her affect was appropriate (AR 184).  Her memory was intact, her concentration was within normal limits, her thoughts were goal-directed, there was no thought disorder and her insight and judgment were within normal limits (AR 184).  Kiska denied hallucinations, delusions and suicidal ideation or intent, although she had suicidal ideations in the past (AR 184).  Dr. Richards felt she was capable of handling her own funds (AR 184).

Treatment notes dated March 3, 2004 from UPMC Behavioral Health revealed Kiska's mental status examination was reported as within normal limits (AR 317).

Roger Glover, Ph.D., a state agency reviewing psychologist, reviewed the psychiatric medical evidence of record on May 5, 2004 and completed a mental residual functional capacity assessment form (AR 304-307).  Dr. Glover opined that Kiska was not significantly limited or only moderately limited in all areas of work functioning (AR 305-306).  Dr. Glover noted Kiska's symptoms were fairly well controlled with treatment and that her activities of daily living and social skills were functional (AR 306).  He concluded that she was mentally capable of carrying out instructions and following a schedule (AR 306).

On September 13, 2004, Kiska was seen by Frank Yohe, M.D., at UPMC Behavioral Health who reported that her mood was depressed and she exhibited a blunt affect (AR 316).

However, her speech was spontaneous and there was no psychosis (AR 316). Dr. Yohe assigned her a GAF score of 50 and continued her medications (AR 316).

On December 6, 2004, Dr. Yohe reported that Kiska's mood was depressed, but her affect was full (AR 315). There was no evidence of psychosis, her concentration was "ok" and her energy was "fair" (AR 315). Dr. Yohe assigned her a GAF score of 55,[3] noted her prognosis was fair and that she had made moderate progress towards goals (AR 315).

In March 2005, treatment notes reflected that Kiska reported continued mood swings from depression to agitation, frequent suicidal ideations with no current intent and increased interpersonal and situational stressors (AR 314). She also claimed she was hearing voices and seeing "dark shadows" (AR 314). R. Buzzard, CRNP, reported that her affect was blunted, her speech was relevant, her attention/concentration was diminished and she had fair energy (AR 314). She was advised to continue her sessions with Dr. Richards (AR 314).

Kiska was seen by Dr. Richards on May 16, 2005 at Stairways Outpatient Clinic (AR 346). He continued her on Depakote and Effexor (AR 346).

On July 12, 2005, Kiska returned to Dr. Richards and reported ongoing stress with her ex-husband, sleep difficulties and agitation (AR 346). She reported that her husband "went ballistic" and mobile crisis was called (AR 346).

Kiska reported that she was getting along better with her ex-husband in August 2005 (AR 345). However, she continued to complain of mood swings and problems with anger (AR 345).

On October 18, 2005, Kiska reported to Dr. Richards that she felt more depressed, stressed and tired during the day (AR 345).

When Kiska returned to Dr. Richards on January 17, 2006, she reported that her daughter was living with her father and doing well in school (AR 354). Dr. Richards noted he would continue her current treatment (AR 354).

Dr. Richards completed a medical source statement on February 14, 2006 (AR 351-353). He opined that Kiska was only slightly limited to moderately limited in most areas of mental

---

[3] Scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)." *Id.*

6

work functioning, but was "marked[ly]" limited in her ability to deal with work stresses (AR 351). He noted that her bipolar disorder made her impulsive and impaired her judgment (AR 351). The medical source statement completed by Dr. Richards contained three categories of work environments that an individual would be limited to: work in a sheltered environment, special supervision and part-time work (AR 353). Dr. Richards checked on the form that Kiska was limited to work in a sheltered noncompetitive workplace (AR 353).

### B. Hearing testimony and ALJ's decision

Kiska and Joseph Kuhar, a vocational expert, testified at the hearing held by the ALJ on February 15, 2006 (AR 393-418). Kiska testified that she lived alone (AR 397-398). She was treated by Dr. Richards at Stairways and Dr. Spencer, her family physician (AR 398-399). She denied suffering from any side effects from her medications (AR 402). Kiska testified that she suffered low back and leg pain daily and that medication provided little relief (AR 399-401). She claimed she sat in a chair most of the day and thought about all of the stress she was going through, although she occasionally went to Wal-Mart with her ex-husband (AR 403; 408). She indicated she was able to lift five pounds, sit for only "minutes" since her lower back and legs bothered her if she sat for too long and walk for about one block (AR 404).

Kiska testified that due to her bipolar disorder, she could not be around people because she would "probably freak out" and was unable to take orders from employers (AR 406). She also claimed that she had "very poor" concentration and short term memory problems (AR 402-403). Finally, Kiska testified that her mental health problems were aggravated by her physical problems (AR 407).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as Kiska, who was able to perform work that did not require exertion above the light level, with no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling (AR 413-414). In addition, the ALJ added that such individual was limited to work involving no more than simple, routine, repetitious tasks with one- or two-step instructions without strict production quotas, meaning the requirement to produce a specified number of units of work in a specific period of time; no more than occasional contact with co-workers and supervisors; and no contact with the public (AR 414). The vocational expert testified that such

an individual could perform the light work positions of plastic mold cleaner and machine tender in the plastics industry (AR 414-415).  The ALJ then asked the vocational expert to identify sedentary jobs with a sit/stand option with the same restrictions (AR 415).  The vocational expert testified that such an individual could perform the sedentary positions of food processing sorter, routing clerk and surveillance system monitor (AR 415).

Following the hearing, the ALJ issued a written decision which found that Kiska was not eligible for SSI benefits within the meaning of the Social Security Act (AR 16-22).

### C. *Medical evidence submitted to the Appeals Council and Appeals Council decision*

#### 1. *Physical impairments*

Following the ALJ's decision denying her claim for benefits, Kiska submitted to the Appeals Council medical records from Dr. Spencer dated from November 2005 through March 2006 (AR 364-388).  Kiska sought emergency room treatment on February 10, 2006 after falling on stairs and landing on her back (AR 383).  Cervical and lumbosacral spine x-rays were negative, she was diagnosed with a bruised back and discharged in stable condition (AR 379; 383).

Kiska returned to Dr. Spencer on February 24, 2006, who noted that "attorney wants lower back checked" since her fall two weeks previous (AR 367).  Kiska complained of pain and pain associated with walking, but denied radiating pain (AR 367).  On physical examination, Dr. Spencer noted upper and lower right paraspinal tenderness and reduced motion bilaterally (AR 367).  His assessment was that Kiska's low back symptoms had worsened and noted that his working diagnosis was chronic back strain (AR 367).  He prescribed medication and instructed Kiska to call if her symptoms did not improve (AR 367).

#### 2. *Mental impairments*

Kiska also submitted to the Appeals Council a report from a psychological evaluation performed by Martin Meyer, Ph.D., and Julie Uran, Ph.D., on January 26, 2006 (AR 358-363). Kiska reported rapid mood swings resulting in anger or depression at least twice daily (AR 359). She described severe and near constant depressive symptoms including rumination of marital problems, excessive eating, feelings of isolation and loneliness and suicidal ideation (AR 359).

She also claimed to suffer from severe and near constant anxiety, induced by claustrophobia and socialization (AR 359). She reported visual, auditory and tactile hallucinations, as well as paranoid thoughts (AR 359). Kiska indicated she had a high degree of social disaffiliation, had long and short-term memory problems and could not sustain focus (AR 360).

Mental status examination revealed that her speech was coherent and spontaneous, her affect was flat, she evidenced apathy/lethargy, she exhibited blocking or difficulty in recalling information and in expression of thought and she appeared to be guarded and/or suspicious of others (AR 360). Drs. Meyer and Uran indicated there was evidence of excessive rumination regarding marriage and her daughter and some indication of somatic preoccupations (AR 360). She had average intelligence with adequate learning abilities and vocabulary, but her ability for sustained concentration was judged to be poor (AR 360). Kiska's social and test judgment were appropriate but her insight was poor (AR 361).

Achievement testing revealed word decoding abilities at the high school level (AR 361). Personality testing was deemed invalid due to significant over-reporting of psychological distress and atypical sensory experiences such as hallucinations (AR 361). Drs. Meyer and Uran opined that Kiska would have difficulties in vocational environments including stamina and pace, as well as emotional stability, particularly interfacing with others (AR 362). They diagnosed her with bipolar disorder with psychosis, panic disorder with agoraphobia and borderline personality disorder, and assigned her a GAF score of 45-50 (AR 362).

The Appeals Council subsequently denied Kiska's request for review (AR 8-11) rendering the ALJ's decision the final decision of the Commissioner. She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence

but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Kiska's case at the fifth step. At step two, the ALJ determined that her degenerative disc disease of the lumbar spine, obesity, tachycardia and depression were severe impairments, but determined at step three that she did not meet a listing (AR 18).[4] At step four, the ALJ determined that she retained the residual functional capacity to perform work that did not require exertion above the light level; or more than occasional climbing, balancing, stooping, kneeling, crouching or crawling; or more than simple, routine, repetitious tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; or more than occasional contact with the public or coworkers; or contact with the public (AR 19). At the final step, the ALJ concluded that Kiska could perform the jobs cited by the vocational expert at

---

[4]Kiska does not challenge the ALJ's findings with respect to her obesity and tachycardia.

the administrative hearing (AR 21-22). The ALJ additionally determined that her statements concerning the intensity, duration and limiting effects of her symptoms were not entirely credible (AR 19). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

As an initial matter, we must determine whether the additional evidence submitted for the first time to the Appeals Council should be considered by the Court in our review. As indicated, the additional records from Dr. Spencer and the psychological evaluation performed by Drs. Meyer and Uran were submitted after the ALJ rendered his decision and were not considered by the ALJ. Pursuant to *Matthews v. Apfel*, 239 F.3d 589, 593 (3rd Cir. 2001), we cannot consider these records in our substantial evidence review of the ALJ's decision. *Matthews* held that in order to qualify for a remand option, three requirements must be satisfied: (1) the additional evidence must be "new"; (2) it must be "material" to determination of the claimant's disability benefits claim; and (3) there must be "good cause" for the claimant's failure to present the new evidence in a prior proceeding. *Matthews*, 239 F.3d at 593 ("[W]hen [a] claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ.").

In this case, although Kiska has not specifically requested a remand on the basis of these records, we find that she has failed to demonstrate that a new evidence remand is warranted. With respect to the psychological evaluation dated January 26, 2006 and Dr. Spencer's treatment notes dated February 10, 2006, this evidence is not "new" since it was in existence or available to Kiska at the time of the administrative hearing on February 15, 2006. *See Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990) (evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding. ..."). Moreover, while this evidence may be arguably "material", i.e., not only relevant and probative but there is a reasonable possibility that it would have changed the outcome of the ALJ's decision, *see Szubak v. Sec. of Health and Hum. Serv's,* 745 F.2d 831, 833 (3rd Cir. 1984), Kiska has failed to demonstrate good cause for not presenting this evidence to the ALJ for consideration.

We recognize that in her brief to the Appeals Council, Kiska argued that Dr. Spencer's

11

records, as well as the psychological report, were not available at the time of the administrative hearing (AR 390). However, at the administrative hearing before the ALJ, a discussion regarding the completeness of the record occurred wherein the ALJ specifically asked Kiska's counsel if they were "aware of any outstanding information in [the] file or elsewhere that should be added to the record to make it complete" (AR 396). Counsel stated he was not aware of any information and specifically represented that "[t]he record is complete" (AR 396). Kiska has provided no reason before this Court for her failure to have presented this evidence to the ALJ for his consideration other than it was "not available" to the ALJ. Such statement falls short of the requirement that a claimant must present "some justification for the failure to acquire and present such evidence to the secretary." *Szubak*, 745 F.2d at 834; *see also Matthews*, 239 F.3d at 593-95 ("[W]e believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ."). Even if counsel was "not aware" of this evidence, Kiska certainly was and should have known such records would be relevant. *Matthews,* 239 F.3d at 595 (deciding it was not good cause where plaintiff "did not realize the importance of obtaining vocational evaluation" because she "should have known that her ability to work was an issue at the ALJ hearing ... ."). We therefore conclude that a remand is not dictated on the basis of these records.

With respect to Dr. Spencer's treatment notes dated February 24, 2006, which post-date the ALJ's decision of February 23, 2006, we find that these records do not relate to the time period for which benefits were denied. *See e.g., Wilson v. Halter*, 2001 WL 410542 (E.D.Pa. 2001), *aff'd in an unpublished opinion*, 2002 WL 130415 (3rd Cir. 2002) (medical reports relating to period of time after that addressed in the hearing are immaterial to the ALJ's decision and therefore do not warrant remand); *Ordo v. Apfel*, 2001 WL 1159856 (E.D.Pa. 2001) (remand not appropriate since new evidence did not relate back to time period for which benefits were denied). Consequently, a new evidence remand is not warranted with respect to these records.

We now direct our attention to Kiska's arguments relative to the evidence that was before the ALJ. Kiska's sole argument on appeal is that the ALJ improperly and/or inadequately rejected the opinions of her treating physicians with respect to both her alleged physical and

12

mental impairments. The Third Circuit has repeatedly noted that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel,* 225 F.3d 310, 317 (3rd Cir. 2000). *See also Plummer v. Apfel,* 186 F.3d 422, 429 (3rd Cir. 1999) (citing *Rocco v. Heckler,* 826 F.2d 1348, 1350 (3rd Cir. 1987). A treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(d)(2). When medical testimony conflicts or is inconsistent, the ALJ is required to choose between them. *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). In making that choice, a treating physician's conclusions are to be examined carefully and accorded more weight than a non-treating physician's opinion. *Podedworny v. Harris*, 745 F.2d 210, 217 (3rd Cir 1984). Where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reasons for doing so. *Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

    *A.    Physical impairments*

Contrary to Kiska's contentions, we find that the ALJ considered Dr. Spencer's opinion consistent with the above standard. As previously indicated, Dr. Spencer opined in February 2006 that Kiska was limited to part-time work, four hours daily, three days a week (AR 349). The ALJ accorded this opinion little weight on the basis that his opinion appeared internally inconsistent with his finding that Kiska could sit for a full eight-hour workday and stand and walk for four hours each in a work day, and Dr. Spencer failed to explain the basis of the limitations imposed (AR 20). The ALJ further noted that Dr. Spencer's opinion was not supported by his own treatment notes (AR 20). The ALJ observed that his opinion was also inconsistent with the objective evidence of record (AR 20). Finally, he noted that Kiska has only required conservative medical management for her back condition (AR 20). Consequently, the

ALJ declined to accord Dr. Spencer's opinion controlling weight.

The ALJ found Dr. Spencer's opinion to have been internally inconsistent. He observed that his opinion relative to Kiska's ability to sit, stand and walk "in an eight-hour workday" were inconsistent with his opinion on the same form that she could only work part-time, three days a week, four hours per day. Moreover, he observed that Dr. Spencer did not provide any narrative explanation or specific findings to support his assessment. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("[F]orm reports in which a physician's obligation is only to check a box or fill in the blank are weak evidence at best."). As further noted by the ALJ, Dr. Spencer's opinions were unsupported by his own clinical findings as set forth in his progress notes. In January 2004, Dr. Spencer reported that Kiska exhibited a full range of motion and had normal stability, strength and tone (AR 339). Although Dr. Spencer's treatment notes reflect that different modalities were prescribed for Kiska's complaints of low back pain, we agree with the ALJ that his treatment notes do not show a severely restricted range of motion, muscle spasms or neurological compromise which would support the limitations imposed.

The ALJ further observed that the objective evidence of record failed to support Dr. Spencer's opinion. An EMG of Kiska's lower extremities conducted in February 2004 revealed findings within normal limits, and an EMG of her upper and lower extremities in early 2005 were also within normal limits (AR 212; 230; 336). While an MRI conducted in June 2003 showed a small disc herniation at the L4-5 level, the radiologist opined that it was clinically insignificant (AR 159). When examined by Dr. Santrock in October 2005 in connection with complaints of knee pain, Kiska was able to walk without the use of assistive devices, go from a seated to standing position with relative ease and easily performed the straight leg raise test without pain (AR 322). Finally, Kiska had only undergone conservative treatment for her low back complaints. Based upon the above, we find no error in the ALJ's failure to accord substantial weight to Dr. Spencer's opinion.

*B.     Mental impairments*

We reach a different result however, with respect to the ALJ's rejection of Dr. Richards' opinion. Dr. Richards opined in February 2006 that Kiska was only slightly limited to moderately limited in most areas of mental functioning, but was "marked[ly]" limited in her

14

ability to deal with work stresses (AR 351).  "Marked" was defined on the form as a "serious limitation" where the "ability to function is severely limited but not precluded" AR 351).  Dr. Richards further opined that Kiska was limited to work in a sheltered noncompetitive workplace (AR 353).  The ALJ rejected this opinion on the basis that: (1) Dr. Richards failed to explain why he chose this level of severity; and (2) "noncompetitive workplace" was not defined by Dr. Richards nor was it explained why that was all Kiska could tolerate (AR 20).

While Kiska challenges the ALJ's rejection of Dr. Richards' opinion on several different grounds, her contention that the ALJ failed to address and/or acknowledge the GAF scores assessed by Drs. Richards or Yohe has merit.[5]  The ALJ discussed Dr. Richards' opinion in his evaluation of the medical evidence, as well as Dr. Yohe's treatment note indicating that Kiska exhibited a blunt affect (AR 20).  However, he did not address Kiska's GAF score of 50 assigned by Dr. Richards in December 2002 and September 2003, and by Dr. Yohe in September 2004, which would indicate serious symptoms, including an inability to keep a job.  *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).

Pursuant to the final rules of the Social Security Administration, a claimant's GAF score is not considered to have a "direct correlation to the severity requirements."  66 *Fed.Reg.* 50746, 50764-65 (2000).  However, the GAF remains the scale used by mental health professionals to "assess current treatment needs and provide a prognosis."  *Id.*  As such, "it constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability."  *Colon v. Barnhart*, 424 F. Supp. 2d 805, 812 (E.D.Pa. 2006); *see also Santiago-Rivera v. Barnhart*, 2006 WL 2794189 at *9 (E.D.Pa. 2006) (case remanded since claimant's GAF score of 50 indicated serious symptoms and ALJ failed to discuss score); *Span v. Barnhart,* 2004 WL 1535768 at *7 (E.D.Pa. 2004) (absent from ALJ's discussion was any meaningful indication of how he considered claimant's GAF scores or discounted their significance); *Escardille v. Barnhart,* 2003 WL 21499999 at *7 (E.D.Pa. 2003) (case remanded because ALJ failed to mention claimant's GAF score of 50 which

---

[5]We are remanding primarily on the basis of the ALJ's failure to have addressed Kiska's GAF scores.  On remand, however, the ALJ is free to flesh out the meaning of a "noncompetitive workplace" through the vocational expert or any other acceptable source.

constituted a specific medical finding that claimant unable to perform competitive work).

The Commissioner argues that Kiska's reliance on the GAF scores assigned is misplaced since GAF scores represent a "snapshot" of her functioning at the time of the evaluation. *Defendant's Brief* p. 20. The Commissioner further argues that although Dr. Yohe assigned her a GAF score of 50 in September 2004, her GAF score at the next session in December 2004 improved to a 55, indicating only moderate symptoms. *Id*. Be that as it may, the fact remains that the ALJ did not address the significance of <u>any</u> of the GAF scores. *Fargnoli v. Halter,* 247 F.3d 43, 43-44 n.7 (3rd Cir. 2001) ("the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"); *see also Robletto v. Barnhart,* 2006 WL 2818431 at *9 n.7 (E.D.Pa. 2006) (rejecting Commissioner's argument that GAF score did not reflect a historical view of the claimant's level of functioning, noting that even if the ALJ chose to discount the claimant's score on that basis, this did not relieve his obligation to address his reasons for doing so in his opinion); *Colon,* 424 F. Supp. 2d at 814 (fact that low GAF scores of 50 were followed by higher GAF scores of 55 did not excuse the "complete absence in the report of any discussion of Plaintiff's lowest scores [by the ALJ].").

The Third Circuit has made clear that the failure of an ALJ to address material evidence prevents a reviewing district court from properly exercising its responsibility under 42 U.S.C. § 405(g) to determine whether a challenged decision of the Commissioner is supported by substantial evidence. *See Fargnoli,* 247 F.3d at 41. Because the ALJ is required to give some reason for discounting the evidence he rejects, *see Adorno v. Shalala,* 40 F.3d 43, 48 (3rd Cir. 1994), and the ALJ's decision here fails to address the GAF score evidence, we are unable to conclude that his decision is supported by substantial evidence. Consequently, the case shall be remanded to the Commissioner who is directed to specifically address this evidence on remand.

### VI. Conclusion

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |  |
|---|---|---|
| DENISE M. KISKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-209 Erie |
| | ) | |
| LINDA S. MCMAHON, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

AND NOW, this 20th day of March, 2007, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 9] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin<br>United States District Judge

cm: All parties of record.